# Gloninger et al. versus Erskine Hazard and Thomas Earp.

*Assignees for Creditors in Bankruptcy, when Terre-Tenants and entitled to Service of sci. fa., to revive Lien of Judgment.—Remedies at Law between Tenants in Common.—Equity Courts have no Jurisdiction when Account is on one side, unless Discovery be sought.*

A tenant in common with two others, of certain lands, gave judgment upon his interest to a creditor, and the same year made an assignment for benefit of all creditors who should release before a given time: four years after, he was discharged as a bankrupt: the judgment was then revived by writs of *scire facias*, and after investigation on a rule taken to show cause why it should not be opened, was ordered by the court to be entered on the land of the defendant on which the original was a lien: on this judgment the defendant's interest was sold at sheriff's sale: the vendees of the purchaser then brought a bill in equity for an account of the rents, issues, and profits of the land, against the other tenants in common. *Held,*

1. That as the writs of *scire facias*, and the rule to show cause, &c., had not been served on the assignee either under the voluntary assignment, or in bankruptcy, nor on any releasing creditor, nor any notice given to creditors under either assignment, some of the parties interested in the title alleged to have passed at sheriff's sale, were not represented: hence, as a decision would not be binding on them, the bill must be dismissed, but without prejudice to the rights of any of the parties.

2. The appropriate remedy of the plaintiffs, the purchaser's vendees, to compel the defendants to acknowledge their title, and admit them to a joint

[Gloninger *et al. v.* Hazard *et al.*]

possession, was by ejectment at law, and not in equity: and thus they could recover the rents in *assumpsit.*

3. Courts of equity have concurrent jurisdiction with courts of law in matters of account, where the accounts are mutual and complicated, and on one side only, ~~or~~ where discovery is sought and is material to relief: but where the accounts are all on one side, and no discovery is sought or required, the case is not one for a court of equity.

APPEAL from the Common Pleas of *Philadelphia.* In Equity.

This was a bill in equity filed by Cyrus D. Gloninger, David Stanley Gloninger, Eliza Marshall, Matilda Gloninger, and Catharine Alice Gloninger, by her guardian John B. Heister, against Erskine Hazard, Thomas Earp, and Jonathan K. Hassinger, to obtain an account of the rents and profits collected by the respondents since April 2d 1850, from four several tracts of land in Luzerne county, Pennsylvania, specifically mentioned in the bill, of which the two first-named respondents owned only two-thirds, the remaining third having, as was alleged, become vested in complainants in fee through a sheriff's sale.

The case was this:—The complainants are vendees of one equal undivided third part of four several tracts of land in Luzerne county, Pa., under J. W. Gloninger, who purchased the same at sheriff's sale on the 5th January 1850, as the property of Jonathan K. Hassinger, one of the respondents. The other two respondents were vested with the title of the remaining two-thirds of the property as tenants in common with the said J. K. Hassinger. There is no dispute that the three respondents became equal owners of the property on 30th May 1837, as vendees of Abiel Abbott.

On the 4th May 1839, a judgment was entered in favour of John W. Gloninger against Jonathan K. Hassinger and David L. Hassinger, for $3342.86. Real debt, $1671.43. On the 3d May 1844, a *scire facias* to revive judgment was issued, returnable first Monday in August 1844; and was returned "*nihil.*" On the 24th August 1844, *alias scire facias* issued returnable first Monday in November 1844; also returned "*nihil.*" On the 11th November 1844, judgment was entered on two returns of "*nihil,*" in Judgment Docket, January Term 1845, No. 61. On the 22d December 1847, a *fieri facias* was sued out, under which certain real estate not in dispute was levied and condemned. On the 29th February 1848, a *vend. ex.* issued. On the 1st April 1848, affidavit and petition of defendants were filed, alleging their discharge in bankruptcy on 29th August 1843 and 30th August 1842, and that the property levied on was acquired after their discharge. Same day, rule to show cause why the judgment entered 11th November 1844, should not be opened and the defendants be let into a defence. Proceedings stayed, meantime.

On the 22d November 1848, the court directed the rule setting

[Gloninger *et al. v.* Hazard *et al.*]

aside the *vend. ex.* and *fieri facias,* and proceedings thereon, and the judgment on the *scire facias* to be made absolute. And ordered that judgment on the *scire facias* be entered again in favour of the plaintiff against all lands of the defendants, or either of them, upon which the original judgment was a lien. Not to affect the persons of defendants, or any property of the defendants, or either of them, acquired since the date of their discharges in bankruptcy. This judgment was entered in Judgment Docket, January Term 1849, No. 119. On the 22d August 1849, a *fieri facias* issued, under which the property in dispute was levied and condemned. On the 1st December 1849, a *vend. ex.* issued, and the property sold 5th January 1850, to John W. Gloninger. January 17th 1850, sheriff's deed was acknowledged, and on the 2d April 1850, deed by John W. Gloninger and wife delivered to complainants in fee.

The case came up in the court below upon bill and answer, and the only questions raised were whether J. W. Gloninger became the owner of one-third of the property by the sheriff's sale, and whether the owners of the remaining two-thirds, who, it is admitted, have collected the rents and profits, shall account to the complainants respecting it.

The defence set up was an alleged outstanding title in John Miles, assignee of Hassinger, under a deed of assignment by him for the benefit of creditors, twenty days after the entry of the judgment against the assignor, to wit, on 4th May 1839.

On hearing, the bill of complaint was dismissed by the Common Pleas (ALLISON, J.); whereupon the case was removed into this court by the complainants, who averred,

1. The court below erred in dismissing the bill of complaint.

2. In holding that the complainants, as grantees of John W. Gloninger, took no title under the sheriff's sale of January 5th 1850.

3. In dismissing the bill of complaint because of the title alleged by the respondents to have become vested in the assignee of Jonathan K. Hassinger.

4. In allowing the respondents to set up the defence made by them.

5. In refusing to compel the respondents to state an account of the rents and profits collected by them from the estate formerly of the said Jonathan K. Hassinger.

6. In not granting the prayer of the complainants' bill.

*W. A. Porter* and *B. Johnson,* for appellants, contended that the title of John W. Gloninger to the land in question was clear and complete, and that the allegation of the appellees of a title outstanding in an assignee of John K. Hassinger was insufficient

[Gloninger *et al. v.* Hazard *et al.*]

to justify their withholding an account of moneys to which they can make no claim of ownership.

The title of John K. Hassinger was acquired May 30th 1837. Judgment was duly entered against him on May 4th 1839, while he still held the property, and within five years thereafter a *scire facias* to revive the same was duly issued, and judgment thereon entered November 11th 1844, and also in a modified form on November 22d 1848. Each of these judgments was duly entered upon the judgment docket. The sheriff's sale, at which John W. Gloninger became the purchaser, took place about six weeks after the entry of the last-mentioned judgment. The record shows the judgment of May 4th 1839 was regularly and promptly revived and kept alive until the day of sale, and even if this were not the case, the sale was perfectly good and effectual as against the defendants, and a mere assignee for the benefit of creditors, who stands in no better position than the debtor himself, holding no interest in the land except in a representative capacity, and not occupying the position either of purchaser, mortgagee, or lien-creditor, nor to be regarded as owner or terre-tenant. There is no allegation that the assignee ever took possession or entered on the management of the estate, but it may be inferred from the answer that the assignment has remained unacted upon from the time of its execution. One tenant in common cannot impugn the ownership of his co-tenant upon any mere inference, or without some positive decided act, of which there should be distinct allegation and clear proof. The answer on this point is altogether negative. His title, or his reversionary interest under the assignment, is not questioned.

The bill shows " that the defendants, or one or more of them, being tenants in common as aforesaid, entered and took possession, and ever since have retained the possession and control of the property." There is no denial by the respondents of this fact. Even if the assignee for creditors could be held to be a purchaser for value, and had taken possession, he ought still to be affected with the consequences of full notice of any subsequent proceedings respecting the judgment, because it laid upon record in the track of his title, and he took the land charged with the encumbrance.

They called the attention of the court to the following propositions :—

I. The lien of the judgment entered on the 11th of November 1844, had not expired at the time of the sheriff's sale, so far as the defendant himself was concerned, and the land levied on.

II. The assignee for creditors of the defendant in the judgment stands in the same legal position as his assignor.

III. The lien of the judgment of 3d May 1839 was preserved as against all persons claiming under J. K. Hassinger, by the

[Gloninger *et al. v.* Hazard *et al.*]

action of *sci. fa.* entered 3d May 1844, and by the entries upon the judgment docket of 11th November 1844 and 22d November 1848.

IV. If any irregularity occurred in the entry by the court of the judgment under which the sale was made, the execution was only voidable, and all informalities were cured by the acknowledgment of the sheriff's deed without objection.

V. The validity of the judgment and execution cannot be inquired into by the respondent in the present proceedings.

VI. After this lapse of time, the court will presume the trust arising under Mr. Hassinger's assignment for the benefit of creditors to be satisfied and extinguished.

1. A judgment became a lien upon the land of the debtor because of a right conferred by statute to take it in execution; which lien has ever since been held an incident of the judgment, extending to every estate or interest in realty vested in the debtor. As against the debtor himself and his representatives it does not expire in five years, nor does the mere running of time, however long, short of a period necessary to raise a presumption of payment, interpose any obstacle between the creditor and the estate of the debtor as a source whence satisfaction of the judgment may be drawn: Hinds *v.* Scott, 11 Penna. Rep. 19.

The court below state that the common law lien of a judgment, and the right of the plaintiff to take the lands of the defendant in execution, was perpetual against all the world, and refer to the case of Bellas *v.* McCarty, 10 Watts 31. In partial regulation of this lien, the Act of 1798, as was held in Fetterman *v.* Murphy, 4 Watts 427, affected the operation of the lien, but not of the judgment, and restricted merely the right to take the land from those who afterwards acquired an estate in it by lien upon it. The words of the act, "that no judgment shall continue a lien," &c., have no relation to the defendant in the judgment; it leaves the right of the plaintiffs as to him precisely as they would have stood before 1798; but it limits the right of a creditor (unless he revives the judgment according to the act and its supplement) to five years, as respects those who purchase or acquire subsequent liens on lands bound by the judgment. See Aurand's Appeal, 10 Casey 151; Konigmaker *v.* Brown, 2 Harris 269; Brobst *v.* Bright, 8 Watts 125; Wells *v.* Baird, 3 Barr 351; Minor *v.* Warner, 2 Grant's Cases 450; McMillan *v.* Red, 4 W. & S. 237, as authorities which preserve the lien of a judgment for more than five years against the defendant himself, and all other persons, except subsequent purchasers and encumbrancers.

2. The voluntary assignee of the defendant in a judgment, for the benefit of creditors, is not a purchaser, owner, or terre-tenant, and his title is no better than that of the defendant: Vandyke *v.* Christ, 7 W. & S. 375; Twelves *v.* Williams, 3 Whart. 485;

[Gloninger *et al. v.* Hazard *et al.*]

Dingler *v.* Kichner, 1 Harris 41; Cahoon *v.* Hollenback, 16 S. & R. 425; Catlin *v.* Robinson, 2 Watts 373; Clippenger *v.* Miller, 1 Penna. Rep. 71; Dohner's Estate, 1 Barr 104; Silverthorn *v.* Townsend, 1 Wright 263; Knowles *v.* Lord, 4 Wh. 500; In re Roberts, Rossiter's Appeal, 2 Barr 372; Foulke *v.* Harding, 1 Harris 242; Luckenbach *v.* Brickenstein, 5 W. & S. 145; Ludwig *v.* Highley, 5 Barr 137, 138; Okie *v.* Kelly, 2 Jones 326; Mellon's Appeal, 8 Casey 121.

3. The original judgment, entered 3d May 1839, was kept revived, and judgment of revival was duly entered and standing on the judgment docket at the time of the sheriff's sale.

The Act of 4th April 1798 does not provide, nor do the decisions require, that service of the *scire facias* to revive shall be different from the original summons, except in the case of terre-tenants. If there are any such, they, or the tenants in possession under them, are entitled to an opportunity to make defence, if they have any.

The judgment was entered the second time on the judgment docket, on 11th November 1844. Subsequently the defendants in the judgment, by application adversely to the plaintiffs, obtained a rule to open the said judgment. During the pendency of this litigation, the plaintiff doubtless considered his *sci. fa.* already issued to revive, &c., as still pending, and he could introduce no new or additional proceedings until final judgment thereon. The suit was ended by judgment *de terris*, entered by the court on 22d November 1848. Between this time and the sale on 5th January 1850, the plaintiff was not required to take any further steps, because the judgment had been revived within a short time and entered on the judgment docket, so as to be notice to all subsequent purchasers or encumbrancers. See Clippinger *v.* Miller, 1 Penna. Rep. 72; In re Dohner's Assignees, 1 Barr 104. Geiger *v.* Hill, 1 Barr 511, was not the case of an assignment for creditors.

4. The sheriff's sale on 5th January 1850 was under a *fi. fa.* and *vend. ex.* issued upon a final judgment, entered by a court of competent jurisdiction, and the sheriff's deed was acknowledged without objection. The executions were, at most, only voidable: Vastine *v.* Fury, 2 S. & R. 426.

It is irregular to issue a *fi. fa.* and *vend. ex.* on the same day and to the same term, and it will not be allowed if objected to before the sale, but will be cured by sale, acknowledgment, and delivery of the deed, and payment of the money. After acknowledgment of a sheriff's deed in open court, the title of the sheriff's vendee cannot be affected by mere irregularities, however gross: McFee *v.* Harris, 1 Casey 102; Wilson *v.* Howser, 2 Jones 109; Patterson *v.* Stewart, 10 Watts 472; Crowell *v.* Meconkey, 5 Barr 168. See Shields *v.* Miltenberger, 2 Harris 80.

[Gloninger *et al. v.* Hazard *et al.*]

5. The defence set up, respects matter in which the respondents have no interest. The alleged claim is only an imaginary or possible one in the assignee for creditors of J. K. Hassinger. The assignee is now deceased, and is no party to the suit. Neither the validity of the judgment entered by the court under which the sale was made, nor the regularity of the process, can with any propriety be attacked in the present proceedings: Hinds *v.* Scott, 1 Jones 19; Dougherty's Estate, 9 W. & S. 189.

6. In any event, the trust arising under the assignment made by Mr. Hassinger must, after this lapse of time, be presumed satisfied and extinguished. Nearly twenty-three years have elapsed since it was made. It is not alleged, in the answer, that an inventory was ever filed or security given. It is believed that the facts are otherwise. It is believed, further, that the assignment passed little or nothing; that the assignee never filed an account and never did an act under the trust, and that no claim was ever made upon by him by creditors. He has been dead for many years, and no successor was appointed. If there were nothing else to save the sheriff's vendee, the court would now, as they have done in many other cases, presume such a trust to be extinguished: Ross *v.* McJunkin, 14 S. & R. 364; Power *v.* Hollman, 2 Watts 218; Commonwealth *v.* Lelar, 1 Harris 22; Drysdale's Appeal, 2 Id. 531; Webb *v.* Dean, 9 Id. 29.

*Eli K. Price*, for appellees.—1. It is not controverted that the judgment-debtor's land stands liable to execution as long as he owns it, and his judgment-debt remains unpaid. The question of lien is of no value in a case simply between the judgment debtor and creditor; the virtue and value of a lien being only in its power to maintain its hold against the claims of other persons than the debtor himself, as purchasers, mortgagees, and other creditors acquiring liens. It continues indefinitely against the heirs and devisees, but lasts only five years, from the judgment-debtor's death, as against *bonâ fide* purchasers, mortgagees, or other judgment-creditors of the heirs or devisees: Konigmaker *v.* Brown, 2 Harris 269. All said under this head seems not to touch the present case.

2. But the question is, whether the judgment against a living debtor shall continue a lien longer than five years, where the debtor has aliened his title in trust for creditors, who remain unsatisfied? The Act of 1798, in general terms, declares that no judgment "shall continue a lien on the real estate of the person against whom such judgment may be entered during a longer term than five years," unless a *scire facias* be sued out within such term; and "all such writs of *scire facias* shall be served on the terre-tenants, or persons occupying the real estate bound by the judgment:" Purd. 461. Here there was no service

[Gloninger *et al. v.* Hazard *et al.*]

of the writ in 1844, on any one occupying the premises, nor upon the assignee; nor was any such person named to be affected by the return of two *nihils*. The question is, whether the assignee is a terre-tenant? that is, whether he owned the title to the land. The owner of the fee is the terre-tenant: Cahoon *v.* Hollenback, 17 S. & R. 432; Dengler *v.* Kiehner, 1 Harris 38; Clippenger *v.* Miller, 1 Penna. Rep. 71. A terre-tenant, if one who holds the title by deed, must place it of record that the limitation may run in his favour: Act of 1849, Purd. 462, pl. 14. A deed conveying the title must, therefore, be taken to make a terre-tenant; and that it is in trust to sell in fee, and pay the proceeds to creditors, cannot make him less the owner. He has the fee that he may convey the fee to a purchaser. The terre-tenant is the principal party to a writ, to revive and continue the lien of a judgment: Lusk *v.* Davidson, 3 Penna. Rep. 229; Sames's Appeal, 2 Casey 184; Armstrong's Appeal, 5 W. & S. 352; Clippenger *v.* Miller, 1 Penna. Rep. 71; Little *v.* Smyser, 10 Barr 381; Brown *v.* Simpson, 2 Watts 233; Zerns *v.* Watson, 1 Jones 260; Davis *v.* Ehrman, 8 Harris 256. If not named in the writ, nor served himself, or by service upon the occupants, the owner does not become a party to be affected: Fursht *v.* Overdeer, 3 W. & S. 470; but is bound in such case if he confesses the judgment to revive: Dickerson & Haven's Appeal, 7 Barr 257. If the assignor remains in possession, service upon him is good, because he is then the occupant under the Act of 1798, and represents the assignee. The occupant and terre-tenant may be different persons, and always are so when the owner is not in actual possession, and his tenants are; but this does not test the question whether a general assignee, for the benefit of creditors, is a terre-tenant or not. The cases 16 S. & R. 425, 1 Penna. Rep. 71, 2 Watts 379, imply that he would be. The other cases cited by appellant, under this head, only determine that the assignee is not a purchaser, for value of the legal title, without notice of a trust, and therefore to be protected, or, as such, having a right to avoid the fraudulent conveyance of his grantor, under the statutes 13 and 27 Eliz. He takes the title as the debtor held it, subject to the trusts that bind him, and the alienations that bound him. None such are alleged to exist here; if they do, let them remain; they are not now here in question. He is not the less vested with the fee. The bill here also sets forth an assignee in bankruptcy in 1843, who, if not the voluntary assignee does not, would represent the creditors with a power to set aside the fraudulent transfers of the assignors: Weber *v.* Samuel, 7 Barr 499; Moss *v.* Hanson, 5 Harris 379. The general assignment was effective to pass the legal title in fee to the assignee, and if that sufficed to make a terre-tenant, he was a necessary party to the revived judgment. It divested Hassin-

ger's title and vested it in Miles: Seal v. Duffy, 4 Barr 274, 280; and this though the title had not been recorded: Id.; Klapp v. Shirk, 1 Harris 589; Speed v. May, 5 Id. 91; Mellon's Appeal, 8 Casey 129. The assignee, therefore, is owner of the title; must be terre-tenant. It is submitted that the judgment of 1844 was no revival of the original judgment to preserve the lien against the lands which produced the rents in question.

3. The judgment of 11th November 1844 was not revived within five years, and the opening and shutting of the judgment, and the issuing of the executions, did not extend the period of the lien to the date of sale. The five years were then running from 11th November 1844, and expired 11th November 1849. Without further revival, the sale was made 5th January 1850: Gallup v. Reynolds, 8 Watts 426–7; Spang v. Commonwealth, 2 Jones 358; Carson v. Coulter, 2 Grant's Cases 121.

If it was a setting aside of the judgment altogether, then there was an interval which lost the lien by breaking the continuity of time. The judgment of 1844 was complete and final; and if that of 1848 was another complete and final judgment, the two had not the same lien.

But the court had no power to open the judgment of 1844 in 1848: Mathers v. Patterson, 9 Casey 487; Catlin v. Robinson, 2 Watts 379, 380; and what was done only bound the parties then and there consenting.

No sci. fa. was issued to continue the lien of the judgment entered November 11th 1844. A fi. fa. was issued 22d August 1849, and venditioni exponas 1st December 1849; but these did not continue the lien after the 11th November 1849; nor as executions could they create a lien, no title being then in the defendants: Act of 1827, Purd. 461, pl. 5; Jamieson's Appeal, 6 Barr 280; Davis v. Ehrman, 8 Harris 256; Riland v. Eckert, 11 Id. 219.

4, 5. All that is cited and said under the fourth and fifth heads need not be controverted. Sheriffs' deeds acknowledged may cure defects in the prior proceedings, and parties may be estopped by negligence when they are bound to speak, to prevent others from being misled to their injury. But if the terre-tenant or owner had no notice, and no day in court, his title could not be swept away upon the principle of estoppel. That judgment which was no lien on his title he was not bound to notice, and cannot affect his title.

If the judgment was not a lien upon the title to the lands, then it is but a very plain and simple proposition, that that title did not pass to the purchaser under it as to one who was not made a party, and not served with the process for the revival of that judgment: Bailey v. Bowman, 6 W. & S. 118; Soles v. Hickman,

5 Casey 342.    Whether the proceedings be regular or irregular, makes no difference to him who is not a party to them.

The future trustee, under the assignment, will not be affected by a judgment and sale to which John Miles was no party, nor by the present proceeding.    These respondents will be accountable to him, if he shall be entitled.    In that case they hold for him, and are to be accountable to him.    They are tenants in common with whomsoever shall have right and title to the share they do not own:  Irvine *v.* Hanlin, 10 S. & R. 221;  Carothers *v.* Dunning, 3 Id. 331;  Watson *v.* Gregg, 10 Watts 296;  Creswell *v.* Altemus, 7 Id. 584.    If complainants are not the true tenants in common, they are not the parties to whom respondents are accountable.

6.    There is no room for the presumption that the trust vested in John Miles became satisfied and extinguished by lapse of time. The answer distinctly avers that the general assignment was made on the 24th May 1839, was on the same day accepted by him, was recorded in Luzerne on the 10th June following, and that certain named creditors, entitled to the benefit of said assignment, yet remain unpaid.

It was not material for respondents to aver that John Miles had not filed an inventory, or that he had never filed an account; but in answer to complainant's counsel's surmise of belief, the defendants' counsel expresses his belief, after inspection of the records, that John Miles did file an inventory of Jonathan K. Hassinger's estate, June 22d 1839;  gave bond with sureties; did file his account, which was advertised and confirmed by the court June 10th 1842, as may be seen in Assignees' Docket, Book B., 133, and said account showed a balance in favour of the assignee of $774.

The opinion of the court was delivered, April 21st 1862, by
WOODWARD, J.—In 1837, Jonathan K. Hassinger became a tenant in common with Erskine Hazard and Thomas Earp, in four tracts of land in Newport township, Luzerne county, each owning an undivided third part.    On the 4th May 1839, a judgment was confessed in the Common Pleas of Luzerne county, by Jonathan K. Hassinger and David S. Hassinger to John W. Gloninger, for a real debt of $1671.43, which became a lien upon Hassinger's interest in the premises.    On the 24th May 1839, Jonathan K. Hassinger and wife executed a general assignment of all his property to John Miles, in trust for the benefit of all creditors who should release before the 24th day of July then next ensuing, which trust was accepted by Miles, the deed of assignment recorded both in Philadelphia and in Luzerne county, and several creditors did release within the time specified, whose debts still remain unsatisfied.    April 29th 1843, Jonathan K.

Hassinger was discharged as a bankrupt. May 3d 1844, a *scire facias* issued to revive the judgment of 4th May 1839, which was returned *nihil,* and an *alias* to November Term 1844 was also returned *nihil,* after which, on the 11th November 1844, judgment was taken and duly docketed. Writs of execution having been issued on this judgment, and levied on other lands which the Hassingers had acquired after their discharge in bankruptcy, they applied to the Court of Common Pleas of Luzerne county to open the judgment of 11th November 1844, and let them into a defence. On the 22d November 1848, the court set aside the executions and the judgment, " *and directed that judgment on the scire facias be entered again in favour of the plaintiff against all lands of the defendants, or either of them, upon which the original judgment was a lien.*" Judgment was accordingly entered January 7th 1849, and on this judgment Hassinger's interest in the Newport lands was seized, condemned, and sold at sheriff's sale, January 5th 1850, to John W. Gloninger, who subsequently conveyed the same to the present plaintiffs.

Neither of the *scire faciases* nor the rule to show cause why the judgment should not be opened, were served on Miles, the assignee, under the voluntary assignment, nor on any releasing creditor, nor on the assignee in bankruptcy; and no creditor interested in either assignment had any notice whatever of the proceedings. Miles died, and no assignee has been appointed in his place, and it does not appear from what we have before us, who the assignee in bankruptcy was, nor whether he ever acted.

The alienees of John W. Gloninger now bring this bill in equity against Hazard and Earp, for an account of the rents, issues, and profits of the estate. The defendants admit the receipt of rents, " of which they have rendered an account to complainants' counsel, showing the rents of said third claimed by them, now in the hands of E. Hazard, to be $154.17, and in the hands of T. Earp to be $13.15;" but they decline " to account with the said complainants for said rents until it shall be determined by a competent legal tribunal that they have good title thereto." Hazard and Earp admitted themselves in possession of the estate, a small part of which is improved for farming purposes, yielding a small rental, the aggregate of which, belonging to the owners of the Hassingers' interest, is represented by the above-stated sums; but they deny that the complainants are the owners of Hassingers' interest.

Although in form it is a suit in equity, it is in fact an action of ejectment by one tenant in common out of possession against his fellow-tenants in exclusive possession of the common estate. And the question tried in the court below, and argued here, was whether the sheriff's sale vested in Gloninger the title of Jonathan K. Hassinger. Was the revival of the judgment upon two

[Gloninger *et al. v.* Hazard *et al.*]

*nihils* in 1844, without notice to terre-tenants, sufficient to continue its lien? Were the assignees terre-tenants? Was the judgment a lien when the land was sold to Gloninger, in 1850? These are the questions which the court below decided, and which counsel argued fully before us. And they were the only questions. There is no dispute about account. The defendants admit a sum of money in their hands, which belongs to the owner of the third part of the estate, and the plaintiffs claim no more money than the defendants admit to be due to somebody.

Now, the first observation to be made upon a case so presented is, that one of the parties interested in the questions to be decided is not before us. Manifestly, Hazard and Earp have no interest in these questions. They make no claim to Hassinger's third part of the lands. To them it is all one whether that interest passed under the voluntary assignment, under the proceedings in bankruptcy, or under the sheriff's sale of 1850. But there is a party somewhere, who is directly interested in the questions, and that party is not in court, and has no notice of the present proceeding. The questions presented for decision are nice and difficult, but our decision of them, without all the parties in interest before us, would be mere *brutum fulmen.* Wherefore, then, should they be decided? What decency or justice would there be in deciding a party's cause before he had been summoned to a hearing? The creditors of Hassinger, either the releasing creditors under the voluntary assignment, or the general creditors under the proceedings in bankruptcy, are most likely that party. If there is no existing assignee to represent them, one may be raised up. And when they, by a new assignee, or some other representative, appear, to contest the title of Gloninger's alienees, it will be soon enough to consider the questions now prematurely presented. If we should decree a payment to the plaintiffs of the moneys which the defendants admit to be in hand, I cannot see how it would protect the defendants against the future suit of whoever may legally represent the creditors of Hassinger. Nor would such a decree establish the title of the plaintiffs against such representative. If, on the other hand, we should decree against the plaintiffs, and leave the money in the hands of the defendants, who do not claim it, it would conclude nothing against the plaintiffs in a future contest with a representative of the creditors. In a word, we are called on to decide mere abstract questions, instead of a concrete case between appropriate parties. Every consideration of what is due to ourselves, as well as to parties, forbids us to entertain such a case.

The next and only other observation we have to make is, that the plaintiffs have ample remedy at law, and therefore should

[Gloninger *et al. v.* Hazard.]

not come into equity. If they wish to compel the defendants to acknowledge their title, and admit them to a joint possession, ejectment is their appropriate remedy. If they want to recover rents, *assumpsit* lies: Burrell's Administrator *v.* Burrell, 9 Casey 492. There is no doubt of our concurrent jurisdiction, with courts of law, in matters of account where the accounts are mutual and complicated, and also where they are all one side, but discovery is sought, and is material to the relief. In the first class of cases, a bill in equity is generally preferable to account render, and as discovery is peculiarly a chancery jurisdiction, a court of equity, to prevent multiplicity of suits, will, when it has legitimately acquired jurisdiction over the cause for purposes of discovery, entertain the suit for relief, and dispose of every connected topic of dispute. But, on the other hand, where the accounts are all on one side, and no discovery is sought or required, courts of equity will decline taking jurisdiction of the cause: Brightly's Eq. pl. 124–25; McGowin *v.* Remington, 2 Jones 63; Shollenberger's Appeal, 9 Harris 340; Bank of United States *v.* Biddle, 2 Parsons 53; Story's Eq. §§ 458–9, 462.

The very simple accounts in this case were all on one side, and no discovery was required, for they were rendered to the counsel of the complainants. The defendants show, indeed, that they settled the rents with C. D. Gloninger up to December 1852, and have hesitated to pay, since that time, only from doubts they entertain of the plaintiffs' title.

This, therefore, was no case for a court of equity. The plaintiffs' appropriate and ample remedy was at law. If they should bring ejectment, and establish their title against the doubts of the defendants, of course they would entitle themselves to a third of the rents, and when some representative of Hassinger's creditors should appear to recover the possession back from the plaintiffs, they would, if successful, recover also the mesne profits. But then the contest would be between the appropriate parties. Or if the representative of the creditors should intervene, and take defence in the action of ejectment which the plaintiffs may bring against Hazard & Earp, the title would get a fair, and, possibly, a final trial.

Without meaning to affirm the principles of law decided by the court below, we do, for the reasons here given, affirm the decree dismissing the bill, but without prejudice to the rights of the parties in any other action or proceeding.

Decree affirmed.